My name is Willis Hamilton. I'm appearing here today on behalf of the Iowa Great Lakes Sanitary Sewer District and I'd like to reserve five minutes of time, if I might, for rebuttal. Before I begin, I'd like to apologize for the size of the appendix. We may have been able to do a better job paring it down, but this is a fairly document-intensive case and a multi-party case. The problems began when the Iowa Great Lakes Sanitary Sewer District determined that they had to expand the Great Lakes Sanitary Sewer materials and its facility. They took bids. They received a winning bid from the McCann Construction Company. Because it was a public works project, they also needed a bond. A bond was purchased from Defendant Travelers and then the project started. Not too long into the project, however, the construction company defaulted and said they didn't have the money to finish the project. At that point, Travelers stepped in and presented what they called a takeover agreement to the Great Lakes Sanitary Sewer District. What they said, essentially, in the agreement was, we guarantee... What is the relevance of the takeover agreement to the issues on appeal? I'm struggling to figure that out. Well, it provides substance to the promises made by Travelers. Well, they went from a contract guarantee, actually contract terms, to essentially guaranteeing that the project would be completed in accordance to the contract documents, and that the project itself would not be just the completion of the buildings and the materials, but rather that the project would be a functioning project. Because Defendant Travelers is taking the position that all they had to do was put it together and not have any responsibilities to determine whether or not the project would actually do what it was designed to do. Can you give me the paragraph in the takeover agreement? I don't remember anything being cited in your briefs saying this is an essential provision over and above the underlying contract itself and the bond. I quote from the takeover agreement, whereas the surety executed and delivered... Just give me an appendix cite. I'm sorry, joint appendix 141. Say what? 141. And that's a provision of the takeover agreement, or that's the start of the agreement? It's the part of the agreement. Pardon? It's the beginning of... What section are you citing? Joint appendix 141, third paragraph down, where it says they're guaranteed the performance and payment obligations of the original contractor. Good. Now, when the contractor defaulted, the takeover agreement was in place, a new contractor was hired. Part of the project, of course, required the placement of an ultraviolet disinfectant system. It was manufactured by the predecessor to Defendant Evokwa. Unfortunately, it was not a system that ever functioned adequately. It was constantly offline. It would, in fact, malfunction to the point where it was not in place and working for roughly 70% of the time. So, in part, this case depends upon the district court's determination that you had to have an expert witness establish that that was a fault of the manufacturer? Well, there's two parts to that. Of course, there's Travelers and Evokwa, and he made that determination with both of them. Our position was that the documents that were incorporated within the bond issued by Travelers recited that the project engineer had the discretion to reject work that was done, and that the parties were bound by the engineer's decision. And precedent we have cited, one of which is the Peter Kiewit case, states that if you agree that a third person can make that decision, then you're bound by that third person's judgment only on the condition that that judgment is reasonable and is consistent with his authority. Now, the engineer... What was the contention made in the complaint regarding liability? The contention was that Travelers breached its agreement, and the other contention was that Evokwa breached its warranty with respect to the ultraviolet disinfectant equipment. Which would require... Evokwa. I'm sorry? Yeah, but Travelers is not responsible for that. Well, Travelers is responsible for virtually everything that occurred in this project, and I'll... That's what your brief says, but I can't imagine that's right. Well... After the project is completed and we're into life under a completed project subject to the equipment supplier's warranty, I would have thought the construction contractor and his bonding company are at least substantially out of the picture. Well, the bond states this. It says we will provide coverage under our bond for the duration of the project, start to finish. And then, for two more years... I want to ask Travelers about that, because they duck the significant what that provision means. But I don't think it means what you say it means. Well, here's how I interpret that, Your Honor. You say that's just a... Okay, we're on the hook for anything bad that goes wrong. Here's why I say that, okay? During that construction phase, we're putting this project together. Not until it's actually finished or substantially complete, we turn it on. And we say, okay, is this working now? Well, for a project... Substantial completion includes testing. It includes... Starting off on successful or satisfactory testing, right? If we're talking ultraviolet equipment, it worked for a brief period of time. We're talking contract and who's obligated for what when. Substantial completion includes a testing to the owner's satisfaction element, doesn't it? It includes that, but, like I say, the equipment had multiple malfunctions before the testing and then multiple malfunctions after successful testing. In fact, it didn't work. It just means you shouldn't have... Your client messed up when they allowed the substantial completion step to be completed. Well, the engineer is the one who was involved in the testing process. They got the equipment to work for 60 days. Then they took it out of service for the winter, which is what they do, put it back into service in the spring. It caught on fire. It was taken back to the factory. Substantial completion certification or whatever it is, the contractual step in the process, completed. The substantial completion was indicated to have occurred in November of 2011. Contractual provision, owner has one year to undo that or get that reconsidered. We went three years past substantial completion, so that's by the books. The substantial completion does not mean complete in accordance with the contract, nor shall substantial completion of all or any part of the project. Joint appendix 779 is part of the wastewater facility improvement documents that are part of the contract. What gives the engineer the authority to declare it defective in perpetuity? That, again, is part of the contract. In perpetuity? I'm sorry? This was some 900-plus days after the declaration of acceptance. Again, it provides for a two-year guarantee and maintenance period from November of 2011 to November of 2013. It wasn't declared until May of 2014. That was because the engineer continued to try to work with the travelers in Ivokwa to get them to return to repair the equipment. What they did was they reexamined the equipment Ivokwa did and said to them, well, it's going to cost $75,000 to repair this equipment, but we're not going to do that. We want you to pay half of that. And the owner said, we've already paid $132,000 for equipment that's spent most of its time in the box and nonfunctioning. So my point is that the two-year period is the period during which the product was malfunctioning and that the engineer then extended to the manufacturer and the travelers additional time to repair it, and then they wouldn't do it without charging the district an additional $35,000. And then the engineer says, sorry, we've tried to work with you. You simply will not return to repair this equipment. We've asked you multiple times to do that. Now our only recourse is to direct you to take the equipment out of service and refund the money that we paid you for for the equipment in the first place. Does the record reflect whether your client did, in fact, finance and install a completely new system? After the fact, they did. It's in the record. I don't have the site right at the moment, but I think my time is up right now. Thank you. Thank you, Mr. Hamilton. Mr. Thrall? Mr. Thrall? I'm sorry, Hammergren is first. Or however ordered, which you may select either of you to go first. Thank you, Your Honor. May it please the court, counsel, my name is Dave Hammergren. I'm with the law firm of Larkin, Hoffman, Daly & Lindgren. With me is co-counsel Inge Schuchard, and we represent the Traveler's Casualty Insurance Company. I see this as a case involving two issues. I've really got one question for you, and then I'm not sure I have any others. And that is, what is Traveler's position as to what the two-year provision means and what function it serves in this relationship? You're speaking about the two-year warranty provision? The two-year provision, the guarantee beyond the substantial completion date. Travelers undertook certain obligations in its bond and its takeover agreement. Just give me a practical example, since you didn't want to talk about it in your brief, and that's all that Iowa State wants to talk about. To me, it sort of muddies what would otherwise appear to be a fine point of departure between the contract portion of the relationship guaranteed by your client's bond and the warranty obligations of the equipment supplier after the project is completed. Travelers had the obligation to bring the project to completion. In other words, to get it to substantial completion and then to final completion. The warranty period kicked in at the time of substantial completion, and according to the contract, that's when the warranties that were provided by Evolqua transferred to the owner. But the bond also contains an obligation to cover that two-year warranty period, and so if Evolqua had breached its warranty, then travelers' obligation during that warranty period would kick in. But the record reflects, and it's deemed admitted by the district court, that Evolqua was responsive and did not breach its warranty during that two-year period. It wasn't the construction contractor's obligation during the one-year following substantial completion. I thought that might have been what you'd say it was limited to. But you're acknowledging that travelers was guaranteeing Evolqua's compliance with its warranties for two years. The bond specifically incorporates that two-year warranty period. Yes, I'm not denying that. Evolqua's warranty is not the contractor's obligation to provide a completed project that worked. It's more than just the contractor's obligation. Right, Evolqua's warranty was with respect to the UV equipment that it manufactured and supplied, and I believe that's the only issue in this case, is the operability or the problems with the UV disinfection system. There's no claim that travelers didn't finish the rest of the project. So what was the district court's basis for granting summary judgment? The district court had two bases for granting summary judgment. Could you raise your mic up just a little bit there? Thank you. Number one, the court had earlier ruled that the district could not present expert witness testimony because they did not disclose any experts to testify. That's not on appeal here. So in that regard, if the contract, I think, said that if their engineer believes it to be defective, why isn't that sufficient if the engineer, I mean, haven't you just granted discretion to the engineer? During the construction of the project, but not some three years after substantial completion of the project and after the expiration of the warranty period. Okay. So what supports that there is some limitation on the time period? We cited provisions in the general contract that it's the provisions that they're relying on that. Is it the two-year guarantee? Is that what, the two-year warranty? No, it's the provision that gives the engineer that authority or supposedly gives them the authority to reject defective work. That specifically refers to rejecting work to lead to a completed project. So once he certifies completion, it's done? That provision is no longer operative. So the engineer no longer has the ability to reject it once he certifies completion? Yes, because he certified completion and acceptance of the U of E system in November of 2001 or 2011. So that provision is inapplicable to the warranty? Yes. They're talking about the project while the project is under construction, and we acknowledge that. That's reasonable that they can do that. But for him to say that he can maintain that authority three years after substantial completion and six months after the warranty period has expired, that's misreading the contract, misapplying the contract, and unreasonable. Also, they did not identify their engineer as an expert witness to testify at trial. So they had no one, including their engineer. We didn't necessarily have to do that if all he has to do is say, I believe it to be defective. But you recall Mr. Hamilton's, where he said that that is subject to, number one, it has to be reasonable. And number two, it has to be within his authority. And for it to be proven reasonable, they would have to provide some basis for that rejection, and they can't do that without expert testimony. And they didn't identify him or anyone else that was going to testify that that equipment was defective. And the reason is that there could have been other reasons why it wasn't working beyond construction and material the way it was made. Yes, the record is explicit. It contains concerns about the way the equipment was maintained, the way it was stored. Every fall they had to take the equipment out and store it and then put it back in. There was concerns about how that was done, and there was concern about how it was operated and whether it was operated properly. And the whole concept of UV disinfection is a complicated scientific matter. And without an expert to point to a specific problem or a specific defect, they couldn't meet their burden of proof to demonstrate a breach of the warranty by Evoqua or a breach of the contract by travelers. Let me ask you. You say that the engineer's authority to reject stops at the time of certification that it was complete. But isn't Section 9.06 a little broader than that? Does it have such a limitation in it? In other words, where do you get that limitation, that that authority ends at the time he deems it satisfactory? Well, that entire paragraph is talking about work that leads up to the completion and acceptance of the project. And it doesn't talk about this authority being unlimited, not only beyond the acceptance of the project, but also beyond the warranty period and ad infinitum. How about just into the warranty period? Does it extend it into the warranty period or not? I don't believe it does. I believe that it... Why is that? Because the warranty is a separate section and there's no mention of the engineer being able to reject in that provision? Yes, because the project is accepted at that point, subject only to the provisions of the warranty and their rights under the warranty. Thank you. I see my time is up. Thank you, Mr. Hamilgren. Mr. Thrall. May it please the Court, Counsel, my name is Michael Thrall. I represent the appellee of Volcoa Water Technologies, LLC. There are two separate bases on which the ruling of District Court Judge Leonard Strand from the Northern District of Iowa can be affirmed as it relates to that part of his ruling, granting Volcoa's motion for summary judgment and dismissing the claims against Volcoa. First, the District Court correctly determined that the plaintiff could not prove its breach of express warranty claim without expert testimony. Secondly, even if there were genuine issues, a material fact as it related to a defect or a breach of the warranty, the undisputed facts of the record establish that Volcoa complied with that warranty in terms of its repair and replacement. As to the first point, we're dealing, as has been discussed already here this morning, ultraviolet equipment. Certainly the nature of the technology, the nature of the equipment, is complex, sophisticated technology that's beyond the common knowledge and experience of the average layperson. Expert testimony was required to establish the defect. The Iowa Great Lakes Sanitary District did not have expert testimony. As a result, they could not establish the defect, and as a result, the court correctly determined that the plaintiff's claim as it relates to the express warranty failed and granted summary judgment on that basis. The second ground deals with the warranty itself. To prevail, the plaintiff had to establish not only a defect in workmanship and materials under the warranty, but also that Volcoa breached the warranty, in other words, failed to replace or repair the defective parts or parts. In this regard, the statement of undisputed facts submitted by Volcoa in that regard was not responded to by the water district, sanitary district in this case. The district court determined under the local rules that those statements, as well as the statements in the statement of undisputed facts submitted by travelers, were deemed admitted. Among those statements were the statement of undisputed fact that Volcoa had addressed the warranty claims that had been submitted and what few warranty claims remained towards the end of it that the district refused to allow Volcoa to address and repair and replace those particular parts. As a result, on the basis of the undisputed facts, we certainly believe that the district court's ruling could be sustained on the basis of the compliance with the warranty by Volcoa. Either one of these grounds is sufficient to sustain the district court's ruling as it relates to Volcoa's breach of a warranty claim made against Volcoa. Either one is sufficient. We believe both are present here and that the district court's ruling should be sustained on those basis. Unless the court has any questions, we would respectfully request that the district court's ruling as to the dismissal of Volcoa be affirmed. Thank you. Thank you, Mr. Thrall. Mr. Hamilton, your rebuttal. If I understand it correctly, it is Traveler's position that once the equipment was in place and a certificate of substantial completion issued, that the engineer no longer had any authority to reject that equipment. If I can cite Joint Appendix 524, Section 1306, it recites that contractors shall correct all defective work, whether or not fabricated, installed, or completed, or if the work has been rejected by the engineer, remove it from the project, replace it with work that is not defective. It would essentially make no sense to even have a performance and maintenance guarantee agreement for two years if the engineer could do nothing about it during that two years. So I respectfully disagree with Mr. Hamilton. There's a difference between saying the engineer couldn't do anything about it and based solely on his belief he can reject it completely and demand a complete refund. I'm not aware of what the engineer could do. I suppose he could approach the contractor and say, I don't like what's happening here. Make a claim under the warranty. Well, except that the warranty is a separate process whereby the owner could claim, as we did, that there was a breach of warranty. But there's nothing in the contract or in the law that I'm aware of that relieves the bonding company from a separate responsibility to the owner as well. So actually the owner could process both claims, which we attempted to do here. And I'm not aware that the warranty then relieves the contractor and the bonding company from their own responsibilities. I don't think that's the argument, though. I think the argument is that the engineer doesn't have the authority upon his belief beyond the date of acceptance. And once he accepts, then you're in the land of just making a warranty claim, at least for two years. Except that I don't see anywhere in the contract where it says that he is precluded from making those judgments after the issue of the substantial completion. And in fact, the contract recites specifically that I'll find it here in a second. At Joint Appendix 531, Section 1704, all representations, identifications, warranties, and guarantees required by the contract documents will survive final payment, completion, and acceptance of the work, or termination or completion of the agreement. All of the language in the contract disputes the argument of Mr. Hamergren that once substantial completion has been reached, there's no more remedy available and the engineer cannot reject the equipment because I find nothing in the contract to support that. And then one other statement he made was, well, how can the engineer establish what is reasonable unless there's been some kind of designation that he is... Are you arguing that Travelers is not limited by the warranty remedies that apply to Evolqua, repair or replace? His contract that he is bound by recites that in fact... We're talking about companies, I'm sorry. I'm sorry, Travelers. So your Travelers Council, as I understood it, said the purpose of that two-year post-completion provision is to guarantee Evolqua's compliance with its warranty obligations. Are you saying it's more? I am. I'm saying the contractor also, and Travelers, have a separate responsibility because under 6.19 of Joint Appendix 513, it recites the contractor warrants and guarantees to owner, engineer, and engineer's consultants that all work will be in accordance with the contract documents and will not be defective. There's no limitation on that guarantee. But the contract is basically done with completion. Substantial completion just means it's finished to the point where the project can be utilized. Your client can sue Travelers to rescind the contract at any time just by the engineer certifying that this is crummy work, get it out of here. I want my money back. The engineer has the right to reject the work, and Travelers agreed to that. For how many years? At least two years after the project has reached substantial completion. Rejected within two years? Rejection is the remedy that exists beyond the two years. But the engineer made it clear that he was unsatisfied with their work for at least the last two or three years of the project. The defect became apparent. There was warranty interaction going on. Yes, except that Including a proposal from Evoqua to a fix. Well, I have to disagree. Three years after completion says we don't like your fix, get this garbage out of here and we'll buy something new. Mr. Thrall said that they complied with their warranty obligations. There are memorandums all through the appendix. There's even Siemens' own report that says basically, no, they haven't done that. They didn't show up for the last year of this project, for the entire year. That's a different, you know, that's your warranty claim, which the district court has thrown out because you can't, you need an expert to prove it. Well, we respectfully disagree, and I see my time is up. Thank you, Your Honor. Thank you, Mr. Hamilton. Thank you also, counsel, for Apollese. The court is grateful for your presence and the argument which you provided to the court. We'll do our best wrestling with the issues and render decision in due course. Thank you.